**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------------------X
WESTPORT MARINA, INC., d/b/a SHIPSTORE.COM; THE
COAST DISTRIBUTION SYSTEM, INC.; KELLOGG
MARINE, INC.; and C.C. MARINE DISTRIBUTORS, INC.

                        Plaintiffs,

                                                              **MEMORANDUM & ORDER**
            -v.-                                              Civil Action No. 06-CV-5569

ADAM BOULAY; THE CLEAN SEAS COMPANY; ABC
CORPS 1-10 (fictitious entities); and JOHN DOES 1-10
(fictitious individuals)

                        Defendants.
---------------------------------------------------------------------------X

APPEARANCES:

**BENNETT, GIULIANO, McDONNELL & PERRONE, LLP**
Attorneys for Plaintiffs
494 Eighth Avenue, 7th Floor
New York, New York 10001
By:     Joseph J. Perrone, Esq.
        Matthew J. Cowan, Esq.

**CHANCE & McCANN, LLC**
Attorneys for Defendant Clean Seas Company
201 West Commerce St.
Bridgeton, New Jersey 08302
By:     Michael J. Fioretti, Esq. (Pro Hac Vice)
        Robert D. Fischer, Esq. (Pro Hac Vice)

**HURLEY, Senior District Judge:**

## I.  INTRODUCTION

        Presently before the Court is a motion for summary judgment filed by defendant Clean

Seas Company ("Clean Seas") pursuant to Federal Rule of Civil Procedure 56.  Plaintiffs'

Second Amended Complaint seeks recovery against Clean Seas on the following twelve counts:

(I) Breach of Contract, (II) Negligence, (III) Breach of Express Warranty, (IV) Breach of

Implied Warranty of Merchantability, (V) Breach of Implied Warranty of Fitness for a Particular

Purpose, (VI) Common Law Fraud, (VII) Negligent Misrepresentation, (VIII) Intentional

Misrepresentation, (IX) Defective Product (Strict Products Liability), (X) Indemnity, (XI)

Contribution, and (XII) Request for Attorneys' Fees and Costs.  Clean Seas' motion for

summary judgment targets all twelve counts.  For the reasons stated below, Clean Seas' motion

is GRANTED in part and DENIED in part.

## II. FACTUAL BACKGROUND

The following facts are undisputed unless otherwise noted.[1]  Clean Seas was a

corporation incorporated under the laws of the State of Florida, with its only office in

---

[1]  Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern
and Eastern Districts of New York ("Local Rule 56.1") requires a party moving for summary
judgment to submit a statement of the allegedly undisputed facts on which that party relies,
together with citations to admissible evidence supporting each such alleged fact.  *See* Local Rule
56.1(a) & (d).  Local Rule 56.1 further provides that a party opposing a motion for summary
judgment must include a statement with correspondingly numbered paragraphs either admitting
or denying the movant's alleged facts and, to the extent any such fact is denied, a citation to
admissible evidence which supports that denial.  *See* Local Rule 56.1(b), (c) & (d).  Where the
party opposing the motion fails to controvert the alleged facts set forth in the movant's Local
Rule 56.1 statement, those facts may be deemed admitted by the Court insofar as they have been
supported by citations to admissible evidence by the movant.  *See Giannullo v. City of New York*,
322 F.3d 139, 140 (2d Cir. 2003); *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001).  In
this case, Plaintiffs responded "deny" to a number of Clean Seas' alleged facts without any
citation to admissible evidence.  To the extent Plaintiffs failed to provide citations to admissible
evidence to support their denials, whereas Clean Seas supported its alleged facts with such
citations, the Court has deemed the alleged facts admitted for the purposes of this motion.  When
only one party's Local Rule 56.1 statement is cited, without an indication that the alleged fact is
contested, the alleged fact has been admitted by the opposing party.  When a fact has been
deemed admitted by the Court, this is specifically indicated.
    The Court notes that it previously alerted Plaintiffs of their obligations under Local Rule
56.1.  On September 23, 2008, the Court ordered Plaintiffs to submit revised opposition papers
and warned Plaintiffs that "[a]ny factual references in . . . [their] papers that are not supported
with pinpoint citations to the record (page and line references for deposition transcripts) will not
be considered by the Court."  (Ct.'s Order at 2, Sept. 23, 2008.)

Jacksonville, Florida. (Def.'s Local Civ. R. 56.1 Statement of Undisputed Material Facts ("Def.'s 56.1") ¶ 1.) The product at issue in this case (the "Product") was marketed as an enzymatic boat coating designed to inhibit marine growth on boat bottoms. (Pls.' Resp. to Def.'s Local Civ. R. 56.1 Statement of Undisputed Material Facts ("Pls.' 56.1") ¶ 41.) The Product was designed and patented by Clean Seas, manufactured by Suntec, Inc., and sold and distributed to Plaintiffs by Dolphinite, Inc. ("Dolphinite") under Dolphinite's label as "Go Fast Bottom Paint" and "Go Fast Inflatable Bottom Coating." (Def.'s 56.1 ¶ 3.) The Product was manufactured beginning in February 2003 and was first received by end-user customers in or around March 2003. (Pls.' 56.1 ¶ 54.) By April 2003, Dolphinite and Clean Seas had begun to receive complaints regarding the effectiveness of the Product. (Pls.' 56.1 ¶ 55.) Dolphinite filed for bankruptcy in 2004 and is no longer conducting business. (Def.'s 56.1 ¶ 5; *see also* Pls.' Revised Decl. of Deps. Ex. A, Vol. 1, 16:17-20.) Clean Seas terminated its business operations in September 2005. (Def.'s 56.1 ¶ 4.)

Plaintiffs are wholesale distributors of marine products who sold the Product to retail distributors, who in turn sold the Product to end-user customers. (Def.'s 56.1 ¶ 6.) Plaintiffs do not allege that they suffered property damage as a result of applying the Product to boats owned by them. (Def.'s 56.1 ¶ 7.) Rather, Plaintiffs allege that the failure of the Product to perform as expected caused them to suffer economic losses in excess of $985,000. (Def.'s 56.1 ¶ 36; *see also* Second Am. Compl. 16-17.) Plaintiffs acknowledge that they are not parties to a contract with Clean Seas, either written or oral. (Pls.' Mem. in Opp'n to Mot. for Summ. J. 16.) Indeed, Plaintiffs had no direct contact with Clean Seas representatives prior to receiving complaints

from end-user customers. (Def.'s 56.1 ¶¶ 13, 15, 20, 21, 22 & 27.)[2] Instead, Plaintiffs were introduced to the Product by and purchased the Product from Adam Boulay ("Boulay"), President and owner of Dolphinite. (Def.'s 56.1 ¶¶ 8, 18, 19 & 26.)

The labels on the Product did, however, include Clean Seas' logo and the notation, "With MET Inside," a reference to Clean Seas' patented enzymatic antifouling additive. (*See* Pls.' Revised Decl. of Documentary Exhibits Ex. 1, 2 & 5.) The labels also contained the following statements: "Keeps hull exceptionally clean from marine growth! Increase speed, Reduce drag, Maximize efficiency!" (Pls.' Revised Decl. of Documentary Exhibits Ex. 1.) Plaintiffs allege, *inter alia*, that "Clean Seas drafted, designed, and had final approval over . . . [all statements on the] labels." (Pls.' Mem. in Opp'n to Mot. for Summ. J. 9.) Plaintiffs further allege that they were merely passive parties in the supply chain and, as such, were guilty of no wrongdoing. (Pls.' Mem. in Opp'n to Mot. for Summ. J. 17-18.) Clean Seas acknowledges responsibility only for the application and storage instructions contained on the Product's labels and denies responsibility for the statements, "Keeps hull exceptionally clean from marine growth! Increase speed, Reduce drag, Maximize efficiency!" (Def.'s Resp. to Pls.' 56.1 ¶¶ 60 & 61.) Instead, Clean Seas asserts that Boulay, as president of Dolphinite and not at the direction of Clean Seas, was responsible for placing these sanguine statements on the labels. (*See, e.g.*, Def.'s 56.1 ¶¶ 9 & 30.)

---

[2] Plaintiffs responded "deny" to ¶¶ 21 & 22, which asserted, *inter alia*, that "[Plaintiff] Kellogg [Marine, Inc.] was unaware that Clean Seas existed prior to the initiation of this litigation." However, Plaintiffs provided no citations to support their denials, while Clean Seas provided citations to admissible evidence to support these alleged facts. (*See, e.g.*, Pls.' Revised Decl. of Deps. Ex. L 88:17-25.) Consequently, the alleged facts have been deemed admitted for the purposes of this motion.

# III.  PROCEDURAL HISTORY

This action was originally filed in the United States District Court for the Northern District of New York, and later transferred to the Eastern District.  Plaintiffs' original Complaint, filed in the Northern District on January 12, 2004, sought recovery against the following defendants: Dolphinite, Inc.; Adam Boulay; The Clean Seas Company; Brook Venture Fund, LP; Brook Venture Partners, LLC; Suntec Paint, Inc.; ABC Corps. 1-10 (fictitious entities); and John Does 1-10 (fictitious individuals).  (*See* Compl.)  The Northern District's docket sheet indicates that the action was terminated as against Dolphinite on June 2, 2004.  On that date, Plaintiffs filed their First Amended Complaint, which omitted Dolphinite, an entity "now in bankruptcy," as a party.  (First Am. Compl. 2.)  The Northern District's docket sheet also indicates that the action was terminated as against Brook Venture Fund, Brook Venture Partners, and Suntec Paint on October 12, 2004.  On that date, the Northern District granted Suntec Paint's motion to dismiss for lack of personal jurisdiction, and granted Brook Venture Fund and Brook Venture Partners' motions to dismiss for failure to state a claim.  (*See* Ct.'s Order (Hurd, J.) at 1, Oct. 12, 2004; *see also* Tr. of Proceedings Before Hon. David N. Hurd, Nov. 1, 2004.)  The Northern District's docket sheet further indicates that Plaintiffs moved for an entry of default against Boulay on November 18, 2004, and that the Clerk of the Court noted Boulay's default on November 19, 2004.  (*See* Req. for Entry of Default, Nov. 18, 2004; Entry of Default, Nov. 19, 2004.)  However, there is no indication that a default judgment was ever entered against Boulay.

Plaintiffs' Second Amended Complaint was filed in the Northern District on May 16, 2005, and seeks recovery against the following defendants: Adam Boulay; The Clean Seas Company; ABC Corps 1-10 (fictitious entities); and John Does 1-10 (fictitious individuals).  (*See*

Second Am. Compl.)  The action was transferred to the Eastern District on September 21, 2006. (*See* Ct.'s Order (Hurd, J.) at 1-2, Sept. 21, 2006.)

## IV.  SUMMARY JUDGMENT STANDARD

Summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56") is only appropriate where admissible evidence, in the form of affidavits, deposition transcripts, or other documentation, demonstrates both the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law.  *See, e.g.*, *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008); *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994).  The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009); *Coppola v. Bear Stearns & Co.*, 499 F.3d 144, 148 (2d Cir. 2007).  No genuine issue of material fact exists when the movant demonstrates, on the basis of the pleadings and submitted evidence, that no rational jury could find in the non-movant's favor.  *See, e.g.*, *Warshawsky*, 559 F.3d at 137; *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).  In deciding a summary judgment motion, a court must resolve all factual ambiguities and draw all reasonable inferences in favor of the non-movant.  *See, e.g.*, *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show there *is* a genuine issue of material fact to be tried.  *See, e.g.*, *Rule v. Brine, Inc.*, 85 F.3d

1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence,"
*Del. & Hudson Ry. Co. v. Cons. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting
*Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v.
U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith
Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and "cannot . . . rely[] on the allegations in his
pleading, or on conclusory statements, or on mere assertions that affidavits supporting the
motion are not credible," *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996)
(citations omitted). Affidavits submitted in opposition to a summary judgment motion must be
based on personal knowledge, must "set forth such facts as would be admissible in evidence,"
and must show that the affiant is "competent to testify to the matters stated therein." *Patterson
v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (citing Fed. R. Civ. P. 56(e)).

When determining whether a genuine issue of material fact exists, "a trial judge must
bear in mind the actual quantum and quality of proof necessary to support liability." *Anderson*,
477 U.S. at 254-55. A court considering a summary judgment motion must be "mindful of the
underlying standards and burdens of proof" because the evidentiary burdens that the respective
parties would bear at trial guide the court in its determination of a summary judgment motion.
*Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252);
*see also Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-movant
will bear the ultimate burden of proof on an issue at trial, the movant's burden under Rule 56
will be satisfied if the movant can point to an absence of evidence to support an essential
element of the non-movant's claim. *See, e.g., Brady*, 863 F.2d at 210-11. Where a movant
without the underlying burden offers evidence that the non-movant has failed to establish her

claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.'"  *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587).

## V.  DISCUSSION

### A.  Breach of Contract Claim (Count I)

Plaintiffs' first count seeks recovery against Clean Seas for breach of contract.  Plaintiffs acknowledge that they are not parties to a contract with Clean Seas, either written or oral.  (Pls.' Mem. in Opp'n to Mot. for Summ. J. 16.)  Nonetheless, Plaintiffs argue they are third-party beneficiaries under the Distribution Agreement between Clean Seas and Dolphinite and, as such, that they have standing to sue Clean Seas for breach of the Distribution Agreement.  (Pls.' Mem. in Opp'n to Mot. for Summ. J. 16; *see also* Def.'s 56.1 Ex. B.)

New York has adopted the reasoning and terminology of the Restatement (Second) of Contracts with regard to whether a third-party beneficiary has enforceable rights under the contract in question.  *See, e.g.*, *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 44-45 (1985).  Under New York law, intended third-party beneficiaries do have such rights, whereas incidental third-party beneficiaries do not.  *See, e.g.*, *Fourth Ocean Putnam Corp.*, 66 N.Y.2d at 44-45.  To qualify as an intended third-party beneficiary, *inter alia*, "recognition of the beneficiary's right to performance must be appropriate to effect the intention of the parties" to the contract.  *Fourth Ocean Putnam Corp.*, 66 N.Y.2d at 44 n.2 (citing Restatement (Second) of Contracts § 302 (1981)).  Intention is determined by examining the contract itself as well as the "surrounding circumstances."  *Septembertide Publ'g, B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 679 (2d Cir. 1989).  At trial, parties claiming to be intended third-party beneficiaries bear the burden of establishing, *inter alia*, "that the contract was intended for [their]

benefit and . . . that the benefit to [them] is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate [them] if the benefit is lost." *Mendel v. Henry Phipps Plaza West, Inc.*, 6 N.Y.3d 783, 786 (2006) (quoting *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 336 (1983)).

In this case, Plaintiffs provide no citations to admissible evidence to support their claim that they were intended third-party beneficiaries under the Distribution Agreement. Specifically, Plaintiffs cite no provisions of the Distribution Agreement itself and, furthermore, cite no admissible evidence relevant to the "surrounding circumstances." *Septembertide Publ'g B.V.*, 884 F.2d at 679. Instead, Plaintiffs merely proffer the wholly conclusory statement that "Dolphinite intended the Plaintiffs to be beneficiaries of the Distribution Agreement between itself and Clean Seas." (Pls.' Mem. in Opp'n to Mot. for Summ. J. 16-17.) Clean Seas has noted the absence of evidence to support Plaintiffs' claimed status as intended third-party beneficiaries. (*See* Def.'s Mem. in Reply to Pls.' Mem. in Opp'n 3-4.) Because Plaintiffs would bear the burden of proof on this issue at trial, Clean Seas has thereby met its burden under Rule 56. *See, e.g.*, *Brady v. Town of Colchester*, 863 F.2d 205, 210-11 (2d Cir. 1988). Plaintiffs' conclusory statement is not sufficient to defeat Clean Seas' properly supported motion for summary judgment. *See, e.g.*, *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996).

Accordingly, Clean Seas' motion for summary judgment is GRANTED with regard to Count I (Breach of Contract).

**B. <u>Negligence and Strict Products Liability Claims (Counts II & IX)</u>**

Plaintiffs' second and ninth counts seek recovery against Clean Seas for negligence and strict products liability. Plaintiffs acknowledge that their claims against Clean Seas are for

9

economic losses.  (*See* Def.'s 56.1 ¶ 36; Pls.' Mem. in Opp'n to Mot. for Summ. J. 8.)  Clean Seas argues that, as such, Plaintiffs' negligence and strict products liability causes of action are barred by New York's economic loss rule.  (*See* Def.'s Mem. in Supp. of Mot. for Summ. J. 14-16.)  Plaintiffs contend that New York's economic loss rule does not bar such tort claims where a manufacturer has expressly warranted the effective performance of its product to the plaintiffs in question.  (Pls.' Mem. in Opp'n to Mot. for Summ. J. 7-8.)

The New York Court of Appeals first announced its economic loss rule in *Schiavone Construction Co. v. Elgood Mayo Corp.*, 56 N.Y.2d 667 (1982), when it adopted the dissenting opinion of Justice Silverman from the case below.  *See Schiavone Constr. Co. v. Elgood Mayo Corp.*, 439 N.Y.S.2d 933, 937-41 (1st Dep't 1981) (Silverman, J., dissenting), *rev'd*, 56 N.Y.2d 667 (1982). Justice Silverman framed the issue before the Appellate Division as follows:

> The issue is whether New York will permit a cause of action based on strict products liability as against a remote manufacturer who made no representations to plaintiffs, who has no privity of contract with plaintiffs, and where the only claim by plaintiffs is that the product failed to function properly, resulting in economic loss to plaintiffs. We must distinguish between two types of cases:  (a) Where the product is unduly dangerous so that the defect causes physical damage . . . to either persons or property. (b) Where the product, although not itself unduly dangerous, does not function properly, resulting in economic loss other than physical damage to persons or property (and where the product is not sold under the manufacturer's trade name or label, or under a warranty, by advertisements or otherwise, that may fairly be said to run from the manufacturer to the ultimate user or purchaser).

*Schiavone*, 439 N.Y.S.2d at 937 (Silverman, J., dissenting), *rev'd*, 56 N.Y.2d 667 (1982). Justice Silverman argued that a cause of action for strict products liability should lie in the former situation, (a), but not in the latter situation, (b):

> [T]he economic ramifications of permitting a cause of action against the manufacturer in the latter situation [(b)] are so extensive and unforeseeable that it is better for the courts not to extend strict products liability to this area, leaving the owner of the product to its remedy based on its contract with the seller, and likewise leaving the seller to its remedies against the person from whom it bought the equipment . . . .

*Schiavone*, 439 N.Y.S.2d at 938 (Silverman, J., dissenting), *rev'd*, 56 N.Y.2d 667 (1982).

Justice Silverman's original characterization of New York's economic loss rule, then, seemed to incorporate several caveats and restrictions. In essence, Plaintiffs and Clean Seas disagree regarding the impact of these apparent caveats and restrictions on this case. Neither party cites, however, what the Court regards as the controlling case on New York's economic loss rule.

In *Bocre Leasing Corp. v. General Motors Corp. (Allison Gas Turbine Div.)*, 84 N.Y.2d 685 (1995), the New York Court of Appeals adopted the restrictive, bright-line version of the economic loss rule first announced by the United States Supreme Court in an admiralty case, *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986). In light of *Bocre*, Plaintiffs' reliance on the apparent caveats and restrictions in Justice Silverman's original characterization of New York's economic loss rule is misplaced. Moreover, a careful reading of *Bocre* suggests that the Court of Appeals would not permit an exception to the economic loss rule in the case at bar.[3] As wholesale distributors of marine products (Def.'s 56.1 ¶ 6), Plaintiffs were commercial purchasers of the Product, and *Bocre* makes clear that commercial purchasers should not expect to recover purely economic losses against a remote manufacturer under strict products liability or negligence theories, *see Bocre*, 84 N.Y.2d at 694. Where, as here, the dispute is "essentially [a] contractual, product-failure controvers[y]," *Bocre*, 84 N.Y.2d at 694, the Court of Appeals has explained that "cogent policy considerations militate against allowing tort recovery for . . . economic losses," *Bocre*, 84 N.Y.2d at 688 (citing *East River*, 476 U.S. at

---

[3] Although *Bocre* does not address the precise exception proposed by Plaintiffs here, the Court of Appeals did reject two other proposed exceptions—specifically, the Court of Appeals rejected arguments that it should carve out restrictions to the economic loss rule so as to allow recovery in tort for economic losses in cases involving "unduly hazardous" products, *Bocre*, 84 N.Y.2d at 691 (citing *East River*, 476 U.S. at 870), or so as to allow recovery in tort for economic losses constituted by "injury to the product itself," *Bocre*, 84 N.Y.2d at 693.

870-75).

Accordingly, Clean Seas' motion for summary judgment is GRANTED with regard to Count II (Negligence) and Count IX (Defective Product—Strict Products Liability).

**C.** **Breach of Express Warranty, Common Law Fraud, Negligent Misrepresentation, and Intentional Misrepresentation Claims (Counts III, VI, VII & VIII)**

Plaintiffs' third, sixth, seventh, and eighth counts seek recovery against Clean Seas for breach of express warranty, common law fraud, negligent misrepresentation, and intentional misrepresentation. Clean Seas contends that it made no representations to Plaintiffs regarding the performance of the Product. (*See* Def.'s Mem. in Supp. of Mot. for Summ. J. 18-19.) Moreover, Clean Seas argues, even assuming *arguendo* Clean Seas made representations to Plaintiffs, that Plaintiffs nonetheless did not rely on any such representations in deciding to purchase the Product. (*See* Def.'s Mem. in Reply to Pls.' Mem. in Opp'n 5-9.) Plaintiffs claim that (1) "all representations made in any sort of marketing or advertising at trade shows, in catalogs, or otherwise, were made [by Boulay] at the direction of Martin Polsenksi, as officer and part owner of Clean Seas," and that (2) "Clean Seas visa vie [sic] the 'MET' notation and the Clean Seas logo [contained on the Product's label] represented and warranted that the paint product protected vessel hulls from marine growth, enhanced fuel efficiency, and increased vessel speed." (Pls.' Mem. in Opp'n to Mot. for Summ. J. 9.) Furthermore, Plaintiffs insist that they relied on representations Clean Seas made in labeling and marketing the Product. (Pls.' Mem. in Opp'n to Mot. for Summ. J. 8.)

1. *Clean Seas Is Not Bound by Any Oral Representations Made to Plaintiffs by Boulay*

Plaintiffs had no direct contact with Clean Seas representatives prior to receiving

complaints about the effectiveness of the Product.  (Def.'s 56.1 ¶¶ 13, 15, 20, 21, 22 & 27.)[4]

However, Plaintiffs allege—without citation to the record—that "all representations made in any

sort of marketing or advertising at trade shows, in catalogs, or otherwise, were made [by Boulay]

at the direction of Martin Polsenksi, as officer and part owner of Clean Seas," seemingly

suggesting that Boulay was Clean Seas' agent and that, as such, Clean Seas is bound by any

representations made orally to Plaintiffs by Boulay.  (*See* Pls.' Mem. in Opp'n to Mot. for

Summ. J. 9.)

    Under New York law, "[a]gency is the relationship that results from the manifestation of

consent by one person [the principal] to another [the agent] that the other shall act on his behalf

and subject to his control, and consent by the other so to act."  *G.D. Searle & Co. v. Medicore

Commc'ns, Inc.*, 843 F. Supp. 895, 904 (S.D.N.Y. 1994) (citing *Kyung Sup Ahn v. Rooney, Pace

Inc.*, 624 F. Supp. 368, 370 (S.D.N.Y. 1985)); *see also N.Y. Marine & Gen. Ins. Co. v. Tradeline

(L.L.C.)*, 266 F.3d 112, 122 (2d Cir. 2001) (quoting *Meese v. Miller*, 436 N.Y.S.2d 496, 499 (4th

Dep't 1981)).  "One of the primary characteristics of agency is that the agent is placed in a

position whereby he may affect or alter the legal relations between the principal and third

persons."  *G.D. Searle & Co.*, 843 F. Supp. at 904 (citing 2 N.Y. Jur. 2d, *Agency and

Independent Contractors* § 2 (1979)); *see also* 15 Causes of Action 723, *Cause of Action for

Economic Loss Resulting from Breach of Express Warranty Under UCC § 2-313* § 7 (2009)

(indicating that "to establish that the defendant made representations relating to the goods

purchased by the plaintiff, it will be necessary for the plaintiff to show either that the defendant

made such representations directly or that such representations were attributable to the

---

[4] *See supra* note 2.

defendant[;] [t]hus, where the representations in question were not made directly by the defendant, it will be necessary for the plaintiff to show that the person or party making them was acting as an agent of the defendant in so doing").

Although Plaintiffs presumably rely on an agency theory, Plaintiffs never explicitly argue in their motion papers that Boulay was Clean Seas' agent and thus, not surprisingly, fail to provide any citations to admissible evidence in explicit support of the view that Boulay was Clean Seas' agent. However, Plaintiffs do provide one citation to admissible evidence that might conceivably support an agency argument. (*See* Pls.' Revised Decl. of Deps. Ex. A, Vol. 2, 65.) Still, that single citation concerns only Clean Seas' undisputed control over the written application and storage instructions on the Product's labels (*see* Def.'s Resp. to Pls.' 56.1 ¶¶ 60 & 61) and amounts, at best, to a mere "scintilla of evidence" on the issue of agency, at least insofar as it relates to any oral representations made to Plaintiffs by Boulay, *Del. & Hudson Ry. Co. v. Cons. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). It is difficult for the Court to discern how a rational juror could conclude, based only on Clean Seas' acknowledged control over the written application and storage instructions on the Product's labels, that Boulay was acting as Clean Seas' agent in making oral representations to Plaintiffs. Indeed, Plaintiffs proffer no citations to admissible evidence to support the view that Clean Seas exercised any control over oral representations made to Plaintiffs by Boulay.

At trial, the party claiming to have dealt with an agent has the burden of proving the agency. *See, e.g.*, *Oldman-Magee Boiler Works, Inc. v. Ocean & Inland Transp. Co.*, 205 N.Y.S. 550, 551 (4th Dep't 1924); *Nomura Sec. Int'l, Inc. v. E*Trade Sec., Inc.*, 280 F. Supp. 2d 184,

196 (S.D.N.Y. 2003) (quoting *La Societe Nationale Pour La Recherche v. Shaheen Natural Res. Co.*, 585 F. Supp. 57, 62 (S.D.N.Y.1983)).  Clean Seas has noted the absence of evidence to support Plaintiffs' apparent position on the issue of agency.[5]  (*See* Def.'s Mem. in Reply to Pls.' Mem. in Opp'n 6; Def.'s Mem. in Supp. of Mot. for Summ. J. 16-17.)  Because Plaintiffs would bear the burden of proof on this issue at trial, Clean Seas has thereby met its burden under Rule 56.  *See, e.g.*, *Brady v. Town of Colchester*, 863 F.2d 205, 210-11 (2d Cir. 1988).  Plaintiffs have proffered, at best, a "scintilla of evidence" on the issue of agency, at least as it relates to any oral representations made to Plaintiffs by Boulay.  *Del. & Hudson Ry. Co.*, 902 F.2d at 178 (quoting *Anderson*, 477 U.S. at 252).  As such, the Court concludes that there are no genuine issues of material fact regarding whether Clean Seas is bound by any representations made orally to Plaintiffs by Boulay and, insofar as any such oral representations are concerned, that Clean Seas is entitled to judgment as a matter of law.

2.  *Plaintiffs Did Not Rely on Any Written Representations Made Via the Product's Labels or Via Any Marketing Literature Distributed to Plaintiffs by Boulay*

Clean Seas contends, even assuming *arguendo* Clean Seas made representations to Plaintiffs via the Product's labels and via any marketing literature distributed to Plaintiffs by Boulay, that Plaintiffs nonetheless did not rely on any such representations in making their

---

[5]  The Distribution Agreement between Clean Seas and Dolphinite, for its part, denies any intention to establish a principal-agent relationship.  Section 3.02 of the Distribution Agreement indicates as follows:

> The relationship of Distributor and Manufacturer established by this Agreement is that of independent contractors, and nothing herein shall be construed to (i) give either party the power to direct or control the day-to-day activities of the other, (ii) constitute the parties as partners, joint venturers, principal and agent, employer and employee, co-owners, franchise or and franchisee [sic], or otherwise as participants in a joint undertaking, or (iii) allow either party to create or assume any obligation on behalf of the other party for any purpose whatsoever.

(Def.'s 56.1 Ex. B 5-6.)

purchasing decisions.  (*See* Def.'s Mem. in Reply to Pls.' Mem. in Opp'n 5-9.)  In essence,

Clean Seas argues that even if there are genuine issues of material fact regarding whether Clean

Seas made representations to Plaintiffs via the Product's labels or via any marketing literature

provided by Boulay, such issues are ultimately irrelevant here since reliance is an essential

element of Plaintiffs' express warranty,[6] common law fraud, negligent misrepresentation, and

intentional misrepresentation claims, and since "[i]f the undisputed facts reveal that there is an

absence of sufficient proof as to one essential element of [a] claim, any factual disputes with

---

[6]  Although the dispute in this case arises out of a sale of goods, neither party cites the New York Uniform Commercial Code ("N.Y. U.C.C.") in connection with Plaintiffs' express warranty claim.  (*See* Def.'s Mem. in Reply to Pls.' Mem. in Opp'n 8-9; Pls.' Mem. in Opp'n to Mot. for Summ. J. 13-16.)  Instead, both parties cite New York case law—in particular, *Randy Knitwear, Inc. v. American Cyanamid Co.*, 11 N.Y.2d 5 (1962), a case that was decided more than two years before the N.Y. U.C.C. went into effect in 1964.  *See* N.Y. U.C.C. § 13-105 (McKinney 2001).  This distinction may be of more than academic interest—while *Randy Knitwear* invokes the language of reliance, N.Y. U.C.C. § 2-313 speaks in terms of "the basis of the bargain."  N.Y. U.C.C. § 2-313(1)(a)-(c) (McKinney 2001).

In *Randy Knitwear*, the New York Court of Appeals held that where a manufacturer has made express warranties regarding its product (e.g., through public advertising or via labels which accompany the product), and where those warranties have been relied upon by a remote purchaser, a lack of privity between the manufacturer and the remote purchaser will not bar the remote purchaser's claim for breach of express warranty against the manufacturer.  *See Randy Knitwear*, 11 N.Y.2d 5.  An official comment under N.Y. U.C.C. § 2-313 indicates that "[a]lthough this section is limited in its scope and direct purpose to warranties made by the seller to the buyer as part of a contract for sale, the warranty sections of this Article are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such a contract."  N.Y. U.C.C. § 2-313 cmt. 2 (McKinney 2001).  As such, the Court concludes that the express warranty provisions under N.Y. U.C.C. § 2-313 leave *Randy Knitwear* undisturbed and that, under *Randy Knitwear*, a reliance standard applies (as is relevant here) between a manufacturer and a remote purchaser who are not in privity of contract.  The Court also notes that subsequent New York cases involving alleged breaches of express warranties between manufacturers and remote purchasers have continued to invoke the language of reliance.  *See, e.g.*, *Silivanch v. Celebrity Cruises, Inc.*, 171 F. Supp. 2d 241, 260 (S.D.N.Y. 2001) (citing *Oak Point Assocs. v. S. States Screening, Inc.*, No. 89 Civ. 7362, 1992 WL 197419, at *3 (S.D.N.Y. Aug. 4, 1992)); *Schimmenti v. Ply Gem Indus., Inc.*, 549 N.Y.S.2d 152, 154 (2d Dep't 1989) (citing *Friedman v. Medtronic, Inc.*, 345 N.Y.S.2d 637, 643 (2d Dep't 1973)).

respect to other elements of the claim become immaterial and cannot defeat a motion for summary judgment." *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

Plaintiffs proffer a single citation to admissible evidence in support of their claim that they relied on any representations made by Clean Seas either via the Product's labels or via any marketing literature provided to Plaintiffs by Boulay.  (*See* Pls.' Revised Decl. of Deps. Ex. L 26:16-29:19.)  However, the proffered testimony concerns only one Plaintiff—namely, Kellogg Marine, Inc. ("Kellogg")—and nowhere indicates that even Kellogg itself (let alone the other three Plaintiffs) ever read or even saw (let alone relied upon) either the Product's labels or any marketing literature provided by Boulay prior to making their purchasing decision.  In fact, when asked directly about marketing literature, Kenneth Ferleger, sales manager for Kellogg, testified that he did not remember seeing any "promotional material" from Dolphinite.[7]  (Pls.' Revised Decl. of Deps. Ex. L 22:13-25.)

Clean Seas has noted the absence of evidence to support Plaintiffs' position on the issue of reliance.  (*See* Def.'s Mem. in Reply to Pls.' Mem. in Opp'n 5-9.)  Plaintiffs would bear the burden of proof on this issue at trial.  *See, e.g.*, *King v. Crossland Sav. Bank*, 111 F.3d 251, 258 (2d Cir. 1997) (citing *Harsco Corp. v. Segui*, 91 F.3d 337, 342 (2d Cir.1996)) (indicating that "a

_____

[7] Ferleger's relevant testimony, in somewhat more detail, indicates as follows:
Q:  What promotional material did Dolphinite provide Kellogg . . . ?
A:  I don't know that we ever got any . . . .
. . . .
Q:  Did you yourself ever see any promotional material?
A:  I don't remember seeing any.
Q:  Would it be the normal course of your business at that time for you as sales manager to see any promotional material that was given to your salesmen in the field?
A:  Yes, if there was promotional material available, generally it would come across my desk.
(Pls.' Revised Decl. of Deps. Ex. L 22:13-23:7.)

plaintiff must prove reasonable reliance 'under New York law to recover for . . . negligent misrepresentation"); *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996) (quoting *Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995)) (indicating that "[t]o prove fraud under New York law, 'a plaintiff must show that . . . plaintiff reasonably relied upon the representation'"); *Arnold v. Krause, Inc.*, 232 F.R.D. 58, 74 (W.D.N.Y. 2004) (citing *Schimmenti v. Ply Gem Indus., Inc.*, 549 N.Y.S.2d 152 (2d Dep't 1989)) (indicating that "[t]o establish a *prima facie* case for breach of express warranty, [p]laintiffs were required to present some evidence that . . . [p]laintiffs relied upon . . . [defendant's] affirmation of fact or promise"). Clean Seas has thereby met its burden under Rule 56. *See, e.g.*, *Brady v. Town of Colchester*, 863 F.2d 205, 210-11 (2d Cir. 1988). Plaintiffs' single citation to admissible evidence—which concerns only one Plaintiff and nowhere suggests even that one Plaintiff ever read or even saw (let alone relied upon) either the Product's labels or any marketing literature provided by Boulay prior to making their purchasing decision—is not sufficient to defeat Clean Seas' properly supported motion for summary judgment.

Accordingly, Clean Seas' motion for summary judgment is GRANTED with regard to Count III (Breach of Express Warranty), Count VI (Common Law Fraud), Count VII (Negligent Misrepresentation), and Count VIII (Intentional Misrepresentation).[8]

### D. Breach of Implied Warranty Claims (Counts IV & V)

Plaintiffs' fourth and fifth counts seek recovery against Clean Seas for breach of implied

---

[8] Clean Seas also argues that "[i]n the event summary judgment is not entered in Clean Seas' favor on plaintiffs' fraud count, this count should nonetheless be dismissed for failure to plead with the particularity required by the Federal Rules of Civil Procedure." (Def.'s Mem. in Supp. of Mot. for Summ. J. 19.) The Court does not reach this issue because the Court concludes that Clean Seas is entitled to summary judgment on Plaintiffs' common law fraud cause of action.

warranties of merchantability and fitness for a particular purpose. Clean Seas argues that because Plaintiffs were not in privity of contract with Clean Seas, Plaintiffs cannot maintain causes of action for breach of implied warranties against Clean Seas. (Def.'s Mem. in Supp. of Mot. for Summ. J. 16-17.) Plaintiffs contend that under New York law privity is not required where a remote purchaser and an immediate purchaser, who is in privity of contract with the manufacturer, have identical interests in remedying the manufacturer's defective product. (Pls.' Mem. in Opp'n to Mot. for Summ. J. 12-13.)

Under New York law, privity is generally required to recover economic losses pursuant to a cause of action for breach of implied warranty. *See, e.g.*, *Adirondack Combustion Techs., Inc. v. Unicontrol, Inc.*, 793 N.Y.S.2d 576, 579 (3d Dep't 2005) (citing *Arthur Jaffee Assocs. v. Bilsco Auto Serv., Inc.*, 58 N.Y.2d 993, 995 (1983)). In support of their claim that an exception to this general privity requirement is applicable here, Plaintiffs cite a single case from the Supreme Court for New York County, *Stuart Becker & Co. v. Steven Kessler Motor Cars, Inc.*, 517 N.Y.S.2d 692 (Sup. Ct. New York County 1987).

Plaintiffs' reliance on *Stuart Becker* is misplaced. *Stuart Becker* allowed an exception to the general privity requirement "[u]nder the distinguishable facts of th[at] case." *Stuart Becker*, 517 N.Y.S.2d at 695. The distinguishable facts of that case involved an automobile lessor which had explicitly assigned all of its warranty rights against the manufacturer to a remote lessee for the duration of the lease agreement between the lessor and lessee. *See Stuart Becker*, 517 N.Y.S.2d at 693. As explained in *Stuart Becker*:

> *As distinct from a remote purchaser further along the distributive chain*, when a lessee, such as Becker, leases an automobile from an automobile leasing enterprise well known to the automobile dealer, the Lessor and Lessee, since both have identical interests when not acting together to remedy the automobile's defect, should be

19

> viewed as a single unit to avoid the application of the doctrine of privity, and the absence of a direct contractual relationship between Becker, the manufacturer and seller of the car should not bar recovery by Becker.

*Stuart Becker*, 517 N.Y.S.2d at 695 (emphasis added). The present case does not involve a lease agreement; rather, it involves a "remote purchaser further along the distributive chain." *Stuart Becker*, 517 N.Y.S.2d at 695. As such, by its own terms, *Stuart Becker* fails to support Plaintiffs' position. In further contradistinction to *Stuart Becker*, in this case there is no allegation that Dolphinite assigned all of its warranty rights against Clean Seas to Plaintiffs. *Cf. Stuart Becker*, 517 N.Y.S.2d at 693.

Accordingly, Clean Seas' motion for summary judgment is GRANTED with regard to Count IV (Breach of Implied Warranty of Merchantability) and Count V (Breach of Implied Warranty of Fitness for a Particular Purpose).

## E. Contribution Claim (Count XI)

Plaintiffs' eleventh count seeks recovery against Clean Seas for contribution.[9] Clean Seas argues that it must be liable to Plaintiffs in tort before Plaintiffs can maintain a claim against it for contribution and that, because Clean Seas is entitled to summary judgment on all counts sounding in tort, Plaintiffs' cause of action for contribution necessarily fails. (Def.'s Mem. in Supp. of Mot. for Summ. J. 20.) Clean Seas is mistaken.

A claim for contribution is brought by one tortfeasor who has been compelled to pay more than its equitable share of a common burden against another tortfeasor so as to force that other tortfeasor to pay its equitable share of the common burden. *See, e.g., Board of Education v. Sargent, Webster, Crenshaw & Folley*, 71 N.Y.2d 21 (1987) (describing historical

---

[9] For ease of discussion, the Court discusses Count XI (contribution) prior to addressing County X (indemnity).

development of contribution claims under New York law). Under New York law, claims for contribution may be asserted between "two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death." N.Y. C.P.L.R. § 1401. "A tortfeasor's liability for contribution may flow from either of two sources: breach of a duty to the plaintiff [the injured party] *or* to the party seeking contribution." *Id.* Practice Commentaries C1401:3 (McKinney 1997) (emphasis added). Thus, even if Clean Seas breached no duty to Plaintiffs, it may still be liable to Plaintiffs for contribution based upon its breach of duty to the injured party, viz. end-user customers who painted their boats with the Product. *See id.* ("In most cases, the tortfeasor against whom a contribution claim is asserted will have breached a duty to the [injured party]"). As such, the Court is unpersuaded, at least as the argument is framed by Clean Seas, that Plaintiffs' cause of action for contribution fails as a matter of law.[10]

Accordingly, Clean Seas' motion for summary judgment is DENIED with regard to Count XI (Contribution).

## F. Indemnity Claim (Count X)

Plaintiffs' tenth count seeks recovery against Clean Seas for indemnification. As opposed to contribution, where the loss is distributed among joint tort-feasors who are each required to pay a proportionate share of the loss, "in indemnity the party held legally liable shifts

---

[10] Another threshold issue, not raised by Clean Seas and thus not considered here, is whether any judgments have been rendered against Plaintiffs pursuant to which Plaintiffs were required to pay in excess of their equitable share. The Court notes that Plaintiffs would not be entitled to recover in contribution for any amounts they have paid to end-user customers in settlement of claims held by such end-user customers. *See* N.Y. Gen. Obl. Law § 15-108(c) (McKinney 2007) (indicating that "[a] tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person"); *see also Orsini v. Kugel*, 9 F.3d 1042, 1046-48 (2d Cir. 1993).

the entire loss to another." *Rosado v. Proctor & Schwartz, Inc.*, 66 N.Y.2d 21, 24 (1985). The right to indemnification arises out of a contract, but the contract is often one implied by law to prevent an unjust enrichment or an unfair result. *Rosado*, 66 N.Y.2d at 24. Such implied indemnification "finds its roots in the principles of equity." *McDermott v. City of New York*, 50 N.Y.2d 211, 216-17 (1980). "Implied indemnification claims . . . may rest on various independent grounds-for example, indemnity may be appropriate because of a separate duty owed the indemnitee by the indemnitor, or because one of two parties is considered actively negligent or the primary or principal wrongdoer." *Bellevue South Associates v. HRH Constr. Corp.*, 78 N.Y.2d 282, 296 (1991). Defendant contends that neither type of indemnification claim is available to Plaintiffs in this action. The Court will discuss each type of indemnification claim separately below.

     1.     Implied Warranty Indemnity Based Upon
               <u>Separate Duty Owed the Indemnitee by the Indemnitor</u>

     The New York Court of Appeals has recognized that a party may assert a claim for implied indemnity against the manufacturer of an allegedly defective product even where no such cause of action may be directly maintained by the injured plaintiff. *See id.* at 297 (finding that "[t]he warranty claim formed an independent basis for liability, available to the indemnitee against the indemnitor regardless of the ability of the plaintiff to assert a similar claim"). Here, the Court has already found that Plaintiffs do not have a meritorious implied warranty claim against Clean Seas. (*See supra* Part V.D. (granting Clean Seas' motion for summary judgment with regard to Count IV and Count V.) Accordingly, Plaintiffs may not maintain an implied warranty indemnification claim against Clean Seas.

2.      <u>Implied Indemnity Claim Against Principal Wrongdoer</u>

Where one party is held liable solely on account of the negligence of another, indemnification applies to shift the entire liability to the one who was negligent.  *See Bellevue*, 78 N.Y.2d at 297-98; *D'Ambrosio v. City of N.Y.*, 55 N.Y.2d 454, 462 (1982).  This type of indemnity is not available, however, where the party seeking indemnification was itself at fault.  *See Bellevue*, 78 N.Y.2d at 297-98 (stating that "innocent party" may shift liability); *Rosado*, 66 N.Y.2d at 24-25 ("A party who has settled and seeks what it characterizes as indemnification thus must show that it may not be held responsible in any degree."); *Trs. of Columbia Univ. v. Mitchell/Giurgola Assocs.*, 492 N.Y.S.2d 371, 375 (1st Dep't 1985) ("Since the predicate of common law indemnity is vicarious liability without actual fault on the part of the proposed indemnitee, it follows that a party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit of the doctrine.").

Plaintiffs argue that because they "have had to defend lawsuits by customers related to the sale of defective paint products that Clean Seas manufactured and expressly warranted[,] Plaintiffs are entitled to indemnification because they have been compelled to pay for the wrong of another."  (Pls.' Mem. in Opp'n to Mot. for Summ. J. 17.)  Plaintiffs further contend that "[a]s a passive party in the supply chain, Plaintiffs in no way contributed any degree of wrongdoing, and therefore, ought to receive the benefit of indemnity."  (*Id.* at 17-18.)  Clean Seas maintains that even assuming *arguendo* the Product was defective, Plaintiffs, as distributors of the defective Product, were not innocent parties.  (Def.'s Mem. in Supp. of Mot. for Summ. J. 21.)

In support of its argument, Clean Seas relies on *Durabla Manufacturing Co. v. Goodyear Tire & Rubber Co.*, 992 F. Supp. 657 (S.D.N.Y. 1998), where the court found that "there is

nothing passive about the role of a distributor of a defective or hazardous product." *Id.* at 660.

In *Durabla*, a distributor of a defective product settled claims brought against it by injured end-users and then sued the manufacturers of the product for indemnity. The distributor "maintain[ed] that the only exposure that led to its settlement of the underlying claims was strict liability . . .[and] that this 'passive' liability [wa]s akin to vicarious liability and therefore permit[ted] a claim for common law indemnification." *Id.* The court rejected this argument, finding that the distributor's role was not passive and that " 'any analogy' between strict liability and 'instances in which liability is fixed on another without regard to any volitional act . . . is clearly flawed.'" *Id.* (quoting *Rosado*, 66 N.Y.2d at 26). The court distinguished between a distributor's liability based upon strict liability, which is not vicarious, and a distributor's liability based upon warranties of suitability and merchantability, where "the liability is truly vicarious, i.e. implied by operation of law, and therefore a claim for indemnification can properly be pled." *Id.*

Relying on *Durabla*, Clean Seas argues that Plaintiffs cannot maintain an indemnity claim "with respect to strict liability or negligence claims" (Def.'s Mem. in Supp. of Mot. for Summ. J. 21), i.e., claims where Plaintiffs' liability to end-users was premised upon negligence or strict liability, because under those circumstances, Plaintiffs' liability would not be passive. The problem with that analysis, however, is that there is no information in the record as to the basis of Plaintiffs' liability to end-users. Although Plaintiffs state generally that they have had to "defend lawsuits by customers" and "they have been compelled to pay for the wrong of another," (Pls.' Mem. in Opp'n to Mot. for Summ. J. 17), they have provided the Court with no details as to the bases of these alleged lawsuits. Thus, based upon the present record, the Court is unable

to determine whether Plaintiffs are barred as a matter of law from maintaining a cause of action for implied indemnification against Clean Seas.[11]

Accordingly, Clean Seas' motion for summary judgment is DENIED with regard to Count X (Indemnity).

### G.  Claim for Attorneys' Fees and Costs (Count XII)

Plaintiffs' twelfth count seeks recovery against Clean Seas for attorneys' fees and costs. Cleans Seas argues that, under New York law, a claim for attorneys' fees and costs cannot be asserted as an independent cause of action; rather, Clean Seas contends that attorneys' fees and costs can only be demanded as an item of damages pursuant to some other cause of action. (Def.'s Mem. in Supp. of Mot. for Summ. J. 22-23.)

Under New York law, there appears to be some authority to support the view that a claim for attorneys' fees and costs may be asserted as a cause of action.  *See Fugazy Travel Bureau, Inc. v. Ernst & Ernst*, 298 N.Y.S.2d 519, 520 (1st Dep't 1969) (citing *Shindler v. Lamb*, 211 N.Y.S.2d 762 (Sup. Ct. New York County 1959)) (indicating that "[i]f the alleged wrongful act of the defendant was the occasion of these [attorney's] fees, and if they are reasonable, a cause of action [for attorney's fees] does lie, as a well recognized exception to the rule that, in the absence of any contractual or statutory liability, attorney's fees and expenses incurred in litigating a claim, aside from the usual court costs, are not recoverable as an item of damages,

---

[11]  The Court notes that although *Durabla* found that a distributor found strictly liable to an end-user may not maintain a claim for indemnity against a manufacturer, there is case law to the contrary.  *See, e.g.*, *Godoy v. Abamaster of Miami, Inc.*, 754 N.Y.S.2d 301, 305-06 (2d Dep't 2003) (finding that distributors held strictly liable to end-user were "innocent conduit[s] in the sale of the defective product" and that "[o]ne who is liable for an injury by imputation of law may seek common-law indemnity from a person primarily liable for the injury") (internal quotation marks omitted).

either in that suit or in a suit subsequently brought"); *see also* 4 N.Y. Practice, *Commercial Litig.*
*in N.Y. State Cts.* § 50:66 (2d ed. 2009) (indicating that "[t]here appears to be no required
manner in New York State courts for pleading a claim for the recovery of legal fees[;] [i]n many
cases, the party advancing the claim will plead it as a separate cause of action in the complaint or
counterclaims"). Moreover, because the Court denies Clean Seas' motion for summary
judgment with regard to Count X, Indemnity (*see supra* Part V.E.), and Count XI, Contribution
(*see supra* Part V.F.), Clean Seas' argument that a cause of action for attorneys' fees and costs
cannot be maintained independently of another cause of action is moot.

Accordingly, Clean Seas' motion for summary judgment is DENIED with regard to
Count XII (Request for Attorneys' Fees and Costs).

## VI.  CONCLUSION

For all the foregoing reasons, Clean Seas' motion for summary judgment is GRANTED
with regard to Count I (Breach of Contract), Count II (Negligence), Count III (Breach of Express
Warranty), Count IV (Breach of Implied Warranty of Merchantability), Count V (Breach of
Implied Warranty of Fitness for a Particular Purpose), Count VI (Common Law Fraud), Count
VII (Negligent Misrepresentation), Count VIII (Intentional Misrepresentation), and Count IX
(Defective Product—Strict Products Liability). Clean Seas' motion for summary judgment is
DENIED with regard to Count X (Indemnity), Count XI (Contribution), and Count XII (Request
for Attorneys' Fees and Costs). Given the absence of information in the record on Plaintiffs'
claims for contribution and indemnity, most notably, whether any judgments have been rendered
against Plaintiffs, whether Plaintiffs entered into any settlements with end-users, and the basis
for any such liability, the Court grants Clean Seas leave to file another motion for summary

judgment on these claims.  Defendants shall serve its motion on or before April 21, 2010;

Plaintiffs shall serve opposition papers on or before May 19, 2010; and Defendants shall serve

reply papers, if any, and file all papers with the Court, on or before June 2, 2010.

**SO ORDERED.**

Dated: March 24, 2010
Central Islip, New York

/s/ _____
Denis R.  Hurley
Senior District Judge