UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
WESTPORT MARINA, INC., d/b/a
SHIPSTORE.COM, THE COAST
DISTRIBUTION SYSTEM, INC.,
KELLOGG MARINE, INC., and
C.C. MARINE DISTRIBUTORS, INC.,

                        Plaintiffs,                   **MEMORANDUM & ORDER**

    -against-                                       06 CV 5569 (DRH) (AKT)

ADAM BOULAY, THE CLEAN SEAS
COMPANY, ABC CORPS 1- 10 (fictitious entities),
and JOHN DOES 1-10 (fictitious individuals),

                        Defendants.
----------------------------------------------------------X

**APPEARANCES:**

**BENNETT, GIULIANO, McDONNELL & PERRONE, LLP**
Attorneys for Plaintiffs
494 Eighth Avenue, 7th Floor
New York, New York 10001
By:    Joseph J. Perrone, Esq.
         Matthew J. Cowan, Esq.

**CHANCE & McCANN, LLC**
Attorneys for Defendant Clean Seas Company
201 West Commerce Street
Bridgeton, New Jersey 08302
By:    Michael J. Fioretti, Esq. (Pro Hac Vice)
         Robert D. Fischer, Esq. (Pro Hac Vice)

**HURLEY, Senior District Judge:**

        By Memorandum and Order dated March 24, 2010, this Court granted in part and denied

in part a motion for summary judgment filed by defendant The Clean Seas Company ("Clean

Seas") pursuant to Federal Rule of Civil Procedure 56. In that Order, the Court dismissed nine of

the twelve claims brought by plaintiffs Westport Marina, Inc., doing business as Shipstore.com

("Westport Marina"), The Coast Distribution System, Inc., Kellogg Marine, Inc., and C.C.

Marine Distributors, Inc. ("C.C. Marine Distributors") (collectively, "Plaintiffs"). The Court denied summary judgment, however, as to Plaintiffs' claims for indemnity (Count X of the Second Amended Complaint) and contribution (Count XI) as well as Plaintiffs' request for attorneys' fees and costs (Count XII). Due to the absence of certain information from the record regarding Plaintiffs' claims for indemnity and contribution, the Court granted Clean Seas leave to file a second motion for summary judgment as to those remaining claims.

Presently before this Court is Clean Seas' second motion for summary judgment which seeks dismissal of Plaintiffs' claims for indemnity and contribution. For the reasons set forth below, Clean Seas' motion is GRANTED.

### FACTUAL BACKGROUND

The following facts are undisputed unless otherwise noted.[1] Clean Seas was a corporation incorporated under the laws of Florida, with its only office in Jacksonville, Florida. (Def.'s 56.1 ¶ 1.) The product at issue in this case (the "Product") was marketed as an enzymatic boat coating designed to inhibit marine growth on boat bottoms. (*Id.* ¶ 2.) The Product was designed and patented by Clean Seas, manufactured by Suntec, Inc., and sold and distributed to Plaintiffs by Dolphinite, Inc. ("Dolphinite") under Dolphinite's label as "Go Fast Bottom Paint" and "Go Fast Inflatable Bottom Coating."[2] (*Id.* ¶ 3.) Plaintiffs are wholesale distributors of

---

[1] In connection the present motion, the parties submitted statements of material facts in compliance with Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1"). "Def.'s 56.1" refers to the "Statement of Undisputed Material Facts in Support of Clean Seas Company's Motion for Summary Judgment on Counts Ten and Eleven." "Pls.' 56.1" refers to "Plaintiffs' Response to Clean Seas' Statement of Undisputed Material Facts."

[2] This action was commenced in the United States District Court for the Northern District of New York and was subsequently transferred to the Eastern District. The original

marine products who sold the Product to retail distributors, who in turn sold the Product to end-user customers. (*Id.* ¶ 4.)

The Product, which was manufactured beginning in February 2003, was first received by end-user customers in or around March 2003. (Order at 3.)[3] By April 2003, Dolphinite and Clean Seas had begun to receive complaints from their end-user customers regarding the Product's effectiveness. (*Id.*) Plaintiffs do not allege that they suffered property damage as a result of applying the Product to boats owned by them. Rather, Plaintiffs allege that the failure of the Product to perform as expected caused them to suffer economic loss. (*Id.*) In particular: (1) Westport Marina claims it made settlement payments to end-user customers in the amount of $2,981.00, and (2) C.C. Marine Distributors claims it made settlement payments to end-user customers in the amount of $7,620.81. (Def.'s 56.1 ¶ 7.)

Clean Seas contends that the only document in the record that demonstrates the legal "basis for the end-users' claims" against Westport Marina is an October 16, 2003 letter written by Brian C. Bonifant (an "apparent end-user") and addressed to a representative of Westport Marina. (*Id.* ¶ 8.) In that letter, Bonifant complains about damages he incurred as a result of purchasing and using the Product and states: "I feel your company bears some burden in this

---

Complaint named Dolphinite and Suntec, Inc. as defendants. According to the Northern District's docket sheet, the action was terminated as against Dolphinite on June 2, 2004. The Northern District's docket sheet further indicates that on October 12, 2004, Suntec, Inc.'s motion to dismiss for lack of personal jurisdiction was granted, and the action was terminated as against Suntec, Inc.

[3] "Order" refers to the Court's March 24, 2010 Memorandum and Order granting in part and dismissing in part Clean Seas' first motion for summary judgment. The factual information referenced in the Order was taken from the parties' Local Rule 56.1 statements and was undisputed unless otherwise noted.

3

issue for distributing a defective product." (*Id.* (citing Aff. of Robert D. Fischer, Esq. in Supp. of Mot. for Summ. J. ("Fischer Aff."), Ex. C).) Clean Seas further asserts that "[t]here is nothing in the record which specifically states the [legal] basis for the end-users' claims against C.C. Marine Distributors, Inc." (Def.'s 56.1 ¶ 9.) Plaintiffs dispute both of these characterizations of the record and assert that "[i]t is undisputed that the basis for the end-user's claim was the defective Product." (Pls.' 56.1 ¶¶ 8, 9.)

Plaintiffs acknowledge that they are not parties to any contract (written or oral) with Clean Seas. (Order at 3.) In fact, Plaintiffs had no direct contact with Clean Seas representatives prior to receiving complaints from end-user customers. (*Id.* at 3-4.) Instead, Plaintiffs were introduced to the Product by and purchased the Product from defendant Adam Boulay ("Boulay"), President and owner of Dolphinite. (*Id.* at 4.)

The labels on the Product included Clean Seas' logo as well as the notation, "With MET Inside," a reference to Clean Seas' patented enzymatic antifouling additive. (*Id.*) The labels also contained the following statements: "Keeps hull exceptionally clean from marine growth! Increase speed, Reduce drag, Maximize efficiency!" (*Id.*) Plaintiffs allege, *inter alia*, that "Clean Seas drafted, designed, and had final approval over . . . [all statements on the] labels." (*Id.*) Plaintiffs further allege that they were merely passive parties in the supply chain and, as such, were guilty of no wrongdoing. (*Id.*) Clean Seas acknowledges responsibility only for the application and storage instructions contained on the Product's labels and denies responsibility for the other statements included on the labels. (*Id.*) Instead, Clean Seas asserts that Boulay, as president of Dolphinite and not at the direction of Clean Seas, was responsible for placing these statements on the labels. (*Id.*)

4

## PROCEDURAL HISTORY

Plaintiffs' Second Amended Complaint, which was filed in the Northern District of New York on May 16, 2005, seeks recovery against Clean Seas and Boulay[4], as well as ABC Corps 1-10 (fictitious entities) and John Does 1-10 (fictitious individuals). The action was transferred to the Eastern District of New York on September 21, 2006. As noted above, Clean Seas filed a first motion for summary judgment and, by Memorandum and Order dated March 24, 2010, the Court dismissed Plaintiffs' claims for breach of contract, negligence, breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, fraud, negligent and intentional misrepresentation, and strict products liability (Counts I through IX).

The Court denied that portion of Clean Seas motion seeking summary judgment on Plaintiffs' claims for contribution and indemnification, as well as Plaintiffs' request for attorneys' fees and costs (Counts X through XII). In particular, the Court noted:

> Given the absence of information in the record on Plaintiffs' claims for contribution and indemnity, most notably, whether any judgments have been rendered against Plaintiffs, whether Plaintiffs entered into any settlements with end-users, and the basis for any such liability, the Court grants Clean Seas leave to file another motion for summary judgment on these claims.

(Order at 26-27.) The Court further found that because it had denied Clean Seas' motion for summary judgment with regard to Plaintiffs' contribution and indemnity claims, "Clean Seas' argument that a cause of action for attorneys' fees and costs cannot be maintained independently

---

[4] The Northern District docket sheet indicates that Plaintiffs moved for an entry of default against Boulay on November 18, 2004, and that the Clerk of the Court noted Boulay's default on November 19, 2004. However, there is no indication that a default judgment was ever entered against Boulay.

of another cause of action is moot." (*Id.* at 26.) The present motion followed.

## *SUMMARY JUDGMENT STANDARD*

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates both the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008); *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009); *Coppola v. Bear Stearns & Co.*, 499 F.3d 144, 148 (2d Cir. 2007). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *See SCR Joint Venture*, 559 F.3d at 137; *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *See Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Cons. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*,

477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted). Affidavits submitted in opposition to summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show that the affiant is "competent to testify to the matters stated therein." *Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (citing Fed. R. Civ. P. 56(e)). "Rule 56(e)'s requirement the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavit also means that an affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial." *Patterson*, 375 F.3d at 219 (citing *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999)).

When determining whether a genuinely disputed factual issue exists, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability," or "the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 254-55. A district court considering a summary judgment motion must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide the district court in its determination of a summary judgment motion. *See Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule

7

56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *See id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.'" *Id.* at 211 (citing *Matsushita*, 475 U.S. at 587). In deciding a summary judgment motion, a court must resolve all factual ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987).

## DISCUSSION

**I.     *Plaintiffs' Contribution Claim is Dismissed***

Count XI of the Second Amended Complaint seeks recovery against Clean Seas for contribution. In their opposition papers, Plaintiffs "concede that they are unable to maintain a claim for contribution." (Pls.' Opp'n at 3.)[5] Accordingly, Clean Seas' motion for summary judgment is GRANTED with regard to Count XI of the Second Amended Complaint, and Plaintiffs' claim for contribution against Clean Seas is dismissed.

**II.    *Plaintiffs' Indemnification Claim is Dismissed***

**A.     *Legal Standard***

"Under New York law, the common law right to indemnification 'arises when one party is compelled to pay for the wrong of another.'" *Fagan v. AmerisourceBergen Corp.*, 356 F. Supp. 2d 198, 221 (E.D.N.Y. 2004) (quoting *Mallouris v. Re Spec Corp.*, 2003 WL 22966287, at *2

---

[5]     "Pls.' Opp'n" refers to Plaintiffs' Opposition to Defendant Clean Seas Company's Motion for Summary Judgment on Counts Ten and Eleven. "Def's Mem." refers to the Memorandum of Law in Support of Clean Seas Company's Motion for Summary Judgment on Counts Ten and Eleven. "Reply" refers to the May 24, 2010 letter submitted by counsel for Clean Seas.

8

(S.D.N.Y. Dec. 15, 2003)). "Accordingly, the common law right to indemnification arises only where a party's liability is based upon the wrongdoing of the party from whom indemnification is sought." *Id.* (citing *Mallouris*, 2003 WL 22966287 at *2). "The basic distinction between common law indemnification and contribution . . . is that 'a party who has itself participated to some degree in the wrongdoing cannot receive the benefit of the [common law indemnity] doctrine,' but only of contribution." *Durabla Mfg. Co. v. Goodyear Tire & Rubber Co.*, 992 F. Supp. 657, 660 (S.D.N.Y. 1998) (quoting *Trustees of Columbia Univ. v. Mitchell/Giurgola Assocs.*, 109 A.D.2d 449, 453 (1st Dep't 1985)). "In other words, contribution involves joint tortfeasors whereas indemnification involves vicarious liability." *Id.*

### B. *The Court's Ruling on the First Summary Judgment Motion*

In its first motion for summary judgment, Clean Seas contended that "even assuming *arguendo* the Product was defective, Plaintiffs as distributors of the defective Product, were not innocent parties" entitled to recovery under a theory of indemnification. (Order at 23.) Clean Seas relied on *Durabla Manufacturing Company v. Goodyear Tire & Rubber Company*, 992 F. Supp. 657 (S.D.N.Y. 1998), as support for this position. (Order at 23-24.) The plaintiff in *Durabla* was a "distributor of sheet gasket materials containing asbestos that were manufactured by defendants." *Durabla Mfg. Co.*, 992 F. Supp. at 658. The plaintiff was sued by numerous claimants "who alleged injuries caused by exposure to the gasket materials," and many of those lawsuits "were ended by plaintiff's payment of substantial settlements." *Id.* Accordingly, the plaintiff sued the defendants for reimbursement based upon, *inter alia*, a theory of common law indemnification. *Id.*

The plaintiff in *Durabla* maintained that it had settled the various lawsuits brought

9

against it based on the assumption that it would be liable under a theory of strict products liability. *Id.* at 660. The plaintiff contended, however, that any liability on its part based upon a theory of strict products liability was merely "passive," and "akin to vicarious liability," and would not constitute the sort of "wrongdoing" that would prevent it from "receiv[ing] the benefit of common law indemnity doctrine." *Id.* (internal quotation marks and alteration omitted). The court disagreed and held that "there is nothing passive about the role of a distributor of a defective or hazardous product, and 'any analogy' between strict liability and 'instances in which liability is fixed on another without regard to any volitional act . . . is clearly flawed.'" *Id.* (quoting *Rosado v. Proctor & Schwartz, Inc.*, 66 N.Y.2d 21, 26 (1985)).

Relying on this principle articulated in *Durabla*, Clean Seas argued "that Plaintiffs cannot maintain an indemnity claim with respect to strict liability or negligence claims, i.e., claims where Plaintiffs' liability to end-users was premised upon negligence or strict liability, because under those circumstances, Plaintiffs' liability would not be passive." (Order at 24 (internal citation omitted).) This Court noted that "[t]he problem with that analysis, however, is that there is no information in the record as to the basis of Plaintiffs' liability to end-users." (*Id.*) Furthermore:

> Although Plaintiffs state generally that they have had to "defend lawsuits by customers" and "they have been compelled to pay for the wrong of another," they have provided the Court with no details as to the bases of these alleged lawsuits. Thus, based upon the present record, the Court is unable to determine whether Plaintiffs are barred as a matter of law from maintaining a cause of action for implied indemnification against Clean Seas.

(*Id.* at 24-25 (internal citation omitted).) Thus, in granting Clean Seas permission to file a second summary judgment motion, the Court noted "the absence of information in the record on

10

Plaintiffs' claims for . . . indemnity, most notably, . . . whether Plaintiffs entered into any settlements with end-users, and the basis for any such liability." (*Id.* at 26.)

### C. *The Present Motion*

#### 1. **The Parties' Contentions**

It appears undisputed that Plaintiffs claim that Westport Marina and C. C. Marine Distributors each made "settlement payments to end-users" in the following amounts: (1) Westport Marina – $2,981.00 and (2) C.C. Marine Distributors, Inc. – $7,620.81. (Def.'s 56.1 ¶ 7.) Plaintiffs assert that it is also undisputed that these settlement payments were actually made to end-users. (Pls.' Opp'n at 1.) Clean Seas, however, "does not admit that settlement payments were made to end-users . . . [and] does not concede that settlement payments were made or that they were reasonable." (Reply at 1.) Rather, Clean Seas argues that its moving papers "merely point[ ] out that Plaintiffs' 'claim' is limited to $10,681.81 for purposes of the motion." (*Id.*)

Clean Seas further contends that, in accordance with the legal principles set forth in *Durabla* above, "[i]n order to prove their implied indemnification claim, Plaintiffs must establish that their liability to end-users was 'truly vicarious,'" and that "Plaintiffs cannot satisfy their burden of proof with the evidence before this Court." (Def.'s Mem. at 5-6.) In opposition, Plaintiffs contend that the Court should deny the present motion for summary judgment because neither party "has further expanded the record" since the Court's decision denying Clean Sea's first summary judgment motion. (Pls.' Opp'n at 3-4.) According to Plaintiffs, "[w]ith Clean Seas advancing the same argument on the same record as it made in its first motion for summary judgment, the Court must come to the same conclusion as it previously did in its Memorandum & Order." (*Id.* at 4.) In response, Clean Seas "submits that the record before the Court is

11

insufficient to create a genuine issue of material fact" as to whether Plaintiffs' "liability to the end-users was 'truly vicarious,'" and so summary judgment must be granted. (Reply at 1-2.)

2. **Analysis**

"A party who has settled and seeks what it characterizes as indemnification [ ] must show that it may not be held responsible in any degree," in order to demonstrate its entitlement to recovery under a theory of indemnification. *Rosado*, 66 N.Y.2d at 24-25; *see also Fromer v. Yogel*, 50 F. Supp. 2d 227, 241 (S.D.N.Y. 1999) ("Because Fromer is a settling tortfeasor, he must show that he 'may not be held responsible in any degree' in order to obtain indemnification implied under New York law.") (quoting *Rosado*, 66 N.Y.2d at 25).

Therefore, assuming *arguendo* that the settlement payments in question were actually made, Plaintiffs will bear the ultimate burden to show that they "may not be held responsible in any degree" with respect to the claims settled by Westport Marina and C.C. Marine Distributors, Inc. *See Rosado*, 66 N.Y.2d at 24-25. On this motion for summary judgment, the Court is mindful that because Plaintiffs, as the non-moving parties, will bear the ultimate burden of proof on this issue, Clean Seas' burden under Rule 56 will be satisfied if it can point to an absence of evidence to support this essential element of Plaintiffs' claim for indemnification. *See Brady*, 863 F.2d at 210-11.

As noted above, Plaintiffs claim that they made settlement payments to end-user customers as follows: (1) Westport Marina claims it made settlement payments totaling $2,981.00, and (2) C.C. Marine Distributors claims it made $7,620.81 worth of settlement

payments. (Def.'s 56.1 ¶ 7.)[6] The Court has examined the record before it to determine if either party has submitted any evidence as to the basis for Westport Marina and C.C. Marine Distributors' liability to their end-user customers which led them to settle those end-user customers' claims.[7] With respect to the settlement payments made by Westport Marina, the only document in the record that even remotely addresses the basis for Westport Marina's liability is the October 16, 2003 letter written by Brian Bonifant, one of the end-user customers to whom Westport Marina made a settlement payment. (*Id.* (citing Fischer Aff., Ex. C).) In that letter, Mr. Bonifant simply states: "I feel your company bears some burden in this issue for distributing a defective product." (*Id.*) Further, it does not appear that either party has submitted any evidence as to the basis for C.C. Marine Distributors' liability to its end-user customers which led it to settle those claims. Plaintiffs maintain that "[i]t is undisputed that the basis for the end-user's claim was the defective Product." (Pls.' 56.1 ¶¶ 8, 9.) Plaintiffs do not, however, offer any evidence as to the theory of their liability which induced them to make the settlement payments at issue.

As noted above, when the non-moving party will ultimately bear the burden of proof on a particular issue at trial, "the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-moving party's claim."

---

[6] It appears from the record that Westport Marina made two settlement payments to two separate end-user customers, Lorin Coppock and Brian Bonifant, in an amount totaling $2,981.10. (Fischer Aff., Ex. C.) It is not clear, however, whether C.C. Marine Distributors made a single $7,620.81 payment to one end-user customer, or whether this figure represents the total amount of settlement payments made to more than one end-user customer.

[7] It does not appear that any of the end-user customers at issue ever filed any lawsuits against any of the Plaintiffs.

*Brady*, 863 F.2d at 211 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-26 (1986)). Here, Plaintiffs, as the "settling tortfeasor[s]" bear the burden to show that they "'may not be held responsible in any degree' in order to obtain indemnification" under New York law. *See Fromer*, 50 F. Supp. 2d at 241 (quoting *Rosado*, 66 N.Y.2d at 25). Clean Seas has demonstrated that there is nothing in the record before the Court to indicate the theory of liability pursuant to which Plaintiffs settled their claims with the end-user customers. The Court finds, therefore, that Clean Seas has met its burden under Rule 56 by "point[ing] to an absence of evidence to support an essential element" of Plaintiffs' indemnification claim. *See Brady*, 863 F.2d at 211.

Accordingly, Clean Seas' motion for summary judgment is GRANTED with regard to Count X of the Second Amended Complaint, and Plaintiffs' claim for indemnification against Clean Seas is dismissed.

## *CONCLUSION*

For all of the foregoing reasons, Clean Seas' motion for summary judgment as to Plaintiffs' remaining claims under Count X (Indemnity), Count XI (Contribution), and Count XII of the Second Amended Complaint is GRANTED.

Plaintiffs are directed to submit a written status report to the Court via ECF on or before November 1, 2010 setting forth what, if any, claims remain pending against any of the remaining defendants named in the Second Amended Complaint.

**SO ORDERED.**

Dated: Central Islip, New York
      October 25, 2010                                               /s/
                                                                     Denis R. Hurley
                                                                     Unites States District Judge